STATE OF VERMONT *v.* JACOB LEVINE

(91 A2d 678)

May Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed October 7, 1952.

*Joseph S. Wool* and *Louis Lisman* for the respondent.

*Richard E. Davis,* State's Attorney, for the State.

CLEARY, J. This respondent was charged in separate informations as accessory before the fact of burglary and as accessory before the fact of grand larceny. He pleaded not guilty and the two cases were tried together. Trial was by jury with a verdict and judgment of guilty in both cases and they are here on the respondent's exceptions.

The exceptions to the denial of the respondent's motions for a directed verdict, to the court's charge to the jury and to the denial of the respondent's motion in arrest of judgment are all briefed on the same ground, namely, that the respondent could not be found guilty of being an accessory before the fact as charged in the informations because there are no such crimes under our law.

The respondent claims that V. S. 47, § 8607 determines the question. It provides that: "A person who is accessory before the fact by counseling, hiring or otherwise procuring an offense to be committed may be complained of, informed against or indicted, tried, convicted and punished as if he were a principal offender and in the court and county where the principal might be prosecuted." The respondent insists that the term "may" as used in this statute must be read as "shall" in order that the legislative intention to abolish the distinction between principals and accessories may be effectuated; that the statute is not permissive but mandatory; that it necessarily follows that the crime of accessory before the fact has ceased to exist and that an accessory must be proceeded against as a principal.

When words of common use are found in a statute, they are to be taken in their ordinary sense, unless a contrary intention clearly appears. *Perkins* v. *Cummings,* 66 Vt 485, 488, 29 A 675. Rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language.

*Dewey* v. *St. Albans Trust Co.,* 57 Vt 332, 338 ; *State* v. *Shaw,* 73 Vt 149, 171, 50 A 863 ; *State* v. *Central Vermont Railway Company,* 81 Vt 459, 462, 71 A 193, 21 LRANS 949 ; *State* v. *Hildreth,* 82 Vt 382, 384, 74 A 71, 24 LRANS 551 ; *In re Sargood,* 86 Vt 130, 136, 83 A 718 ; *In re Dexter,* 93 Vt 304, 312, 107 A 134 ; *Coral Gables Inc.* v. *Christopher,* 108 Vt 414, 418, 189 A 147, 109 ALR 474 ; *Lorenz* v. *Campbell,* 110 Vt 200, 202, 3 A2d 548 ; *State* v. *Sylvester,* 112 Vt 202, 207, 22 A2d 505 ; *Gould* v. *Parker,* 114 Vt 186, 190, 42 A2d 416, 159 ALR 622.

█ In determining whether the word "may" when used in a public statute is to be construed as imposing an absolute duty or merely a discretionary power, the general rule of statutory construction should be applied that the true intent and purpose of the Legislature must be ascertained and given effect. The ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions, and, in ascertaining the intention of the Legislature, the history of the statute in question becomes material. *Joy* v. *Swanton Bank & Trust Co.,* 111 Vt 106, 109, 10 A2d 216 ; *Snyder* v. *Central Vermont Railway,* 112 Vt 190, 192, 193, 22 A2d 181.

The respondent's brief states that our statute "is derived from the English statute of 11 and 12 Victoria, Chap. 46, § 1." The preamble of the English statute states it is for the purpose of relaxing the technical strictness of criminal proceedings, and to insure the punishment of the guilty without depriving the accused of any just means of defense. A Pennsylvania statute provides that an accessory before the fact may be indicted, tried and convicted, as if he were the principal felon. In *Brandt* v. *Pennsylvania,* 94 Penn St Rep 290, the Court at p. 301 says : "The 44th section of our Criminal Procedure Act is a transcript of the English Statute, 11 and 12 Victoria Ch. 46, § 1. Mr Archibald, in his Criminal Practice and Pleading (Vol. 1, p. 71), after quoting the statute, says : 'In all cases of felony, therefore, the accessory is punished in the same manner precisely as the principal felon ; and he may now be indicted either as a principal— that is, he may be charged in the indictment with having actually committed the offense as principal in the first degree—or he may be indicted as for a substantive felony, or he may be indicted as accessory with the principal, at the option of the prosecutor.' " *Commonwealth* v. *Mendola,* 294 Pa 353, 144 A 292 at 294, calls attention to the Brandt case and says : "The statute enables the common-

wealth to disregard the distinction between a principal and an accessory before the fact."

Nothing can be drawn from the history of V. S. 47, § 8607 which would compel the inference that the Legislature intended other than the ordinary or permissive meaning to be given to the word "may" as used in the act. It is apparent that the object of the enactment was to permit the state to prosecute an accessory before the fact as a principal rather than to prevent prosecution of an accessory as such.

It is also significant that V. S. 47, § 8606 and § 8608, the two sections immediately preceding and immediately following § 8607, and both dealing with accessories, use the word "shall." This would indicate the intention of the Legislature purposely to differentiate in the use of the two words. It is only reasonable to assume that the use of the different words was intentional. *Snyder* v. *Central Vermont Railway, supra,* 193.

The respondent cites *Regina* v. *Manning,* 2 Car & K 892; *People* v. *Bliven,* 112 NY 79, 19 NE 638, 8 ASR 701; *Spies* v. *People,* 122 Ill 1, 12 NE 865, 17 NE 898, 3 ASR, 320, 340, and *State* v. *Marsh & Buzzell,* 70 Vt 288, 40 A 836. All of these cases state that the prevailing statutes abolish or remove the distinction between principals and accessories before the fact. None of them except the New York case hold that an accessory must be proceeded against as a principal. But the code that governed there provided that an accessory before the fact "is a principal." The Illinois statute that governed the case cited from that state provided that an accessory before the fact "shall be considered as principal."

In *State* v. *Marsh & Buzzell, supra,* 303, 304, the respondents were charged as principals. The case holds that, under the statute, the jury might convict the respondents or either of them, as principals, even if the evidence only tended to show that they, or either of them, were accessories before the fact. At common law an accessory before the fact could not, in felonies, be tried and convicted as such upon an indictment charging him as principal but he could be in misdemeanors. There were no accessories before the fact in misdemeanors. The opinion states that the statute places such accessories, in all crimes, on the same legal standing in which they were at common law, when the crime charged was a misdemeanor; that the statute removes the distinction which existed at common law between felonies and misdemeanors and places felonies upon the basis of misdemeanors at common law. That is true if the

state chooses to prosecute under the statute rather than at common law. But it does not follow that the state must prosecute under the statute rather than at common law. It seems clear to us that the word "may" was used in the act in its ordinary meaning, that it is permissive rather than mandatory, and that the respondent's exceptions under discussion are of no avail. See *Ackerman* v. *Kogut,* 117 Vt 40, 51, 84 A2d 131; *Snyder* v. *Central Vermont Railway, supra,* 193; *Joy* v. *Swanton Bank & Trust Co., supra,* 109, 111; *State* v. *Massey,* 72 Vt 210, 216, 47 A 834.

During argument to the jury the respondent excepted to comment by the State's attorney on the failure of the respondent to take the witness stand. Later in the argument the following occurred:

> "MR. DAVIS: * * * That is why Mr. Levine isn't getting up and testifying, isn't giving the State an opportunity to cross-examine him. That is why he is the kind of guy to do something like this, he hasn't got the guts—
>
> "MR. LISMAN: May the record show the State's Attorney is arguing that the failure of the respondent to take the stand warrants the inference that he lacks courage to do anything other than the crime with which he is charged. We except to that argument and ask for an exception."

The respondent has briefed his last quoted exception and says that the only purpose that the State's attorney could have had in making the argument was to urge upon the jury that it draw the inference from the respondent's failure to testify that he was a person lacking in courage and that therefore he was the kind of a person who would procure another to commit his crimes for him; that, by virtue of the inference which he improperly drew, the State's attorney urged upon the jury a piece of evidence which was not in the case.

The State had alleged that the crimes were committed on April 21, 1950. The respondent had not taken the witness stand. His defense was an alibi and his evidence consisted entirely of depositions taken in Montreal and exhibits. The depositions tended to prove that the respondent was in Montreal on April 20 and left there on April 23, 1950, that while there he had been sent to a doctor by the druggist at the corner of Peel and St. Catherine Streets in

Montreal. In rebuttal the State's evidence tended to prove that the drug store was not in operation on the dates in question, due to its previous destruction by fire; also, that on April 22, 1950, the respondent made a telephone call to Barre, Vermont, from Burlington, Vermont.

We have frequently held that where a respondent has it peculiarly within his power to produce a witness, whose testimony would elucidate the transaction, his failure to do so is a proper matter of comment by counsel and court and consideration by the jury, and creates a presumption, or raises the inference, that the testimony if produced would be unfavorable. *State* v. *Ward,* 61 Vt 153, 191, 17 A 483; *State* v. *O'Grady,* 65 Vt 66, 69, 25 A 905; *State* v. *Fitzgerald,* 68 Vt 125, 127, 34 A 429; *State* v. *Smith,* 71 Vt 331, 334, 45 A 219; *State* v. *Parker,* 104 Vt 494, 502, 162 A 696; *State* v. *Baker,* 115 Vt 94, 109, 53 A2d 53. The inference arising from the failure of the accused to testify in his defense is no different from the inference arising from his failure to produce a witness peculiarly within his power whose testimony would shed light upon the matters in issue, or arising from the failure of a party in a civil case to testify. The inference does not amount to substantive proof of a fact necessary to the State's case, and does not arise until the State has introduced evidence of facts and circumstances, which, if believed, show beyond a reasonable doubt that the respondent is guilty of the crime charged. *Arbuckle* v. *Templeton,* 65 Vt 205, 211, 25 A 1095; *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt 294, 329, 60 A 74. But when the State has introduced evidence of such facts and circumstances which the accused could by his oath deny or explain, his failure to testify in his own behalf raises a strong inference that he cannot truthfully deny or explain them, and that if he had testified his testimony would have been unfavorable to him. *State* v. *Smith, supra; Anderson* v. *Dutton,* 100 Vt 464, 467, 139 A 210; *State* v. *Parker, supra; Barilone Sons Construction Co.* v. *Reynolds,* 109 Vt 436, 440, 199 A 259; *State* v. *Baker, supra.* The rule requires counsel to confine his argument to the evidence in the case and to the inferences properly to be drawn therefrom, and to avoid appealing to the prejudice of the jury. *Duchaine* v. *Ray,* 110 Vt 313, 321, 6 A2d 28; *Hall* v. *Fletcher,* 100 Vt 210, 213, 136 A 388. The language used by the State's attorney was crude and unbecoming before a mixed jury of ladies and gentlemen but his inference was warranted and the exception is not sustained.

The State introduced evidence tending to show that over a period of ten or twelve years before 1947 the respondent had business dealings with Wilkins, the person who committed the principal offenses; that the dealings involved the sale of stolen goods to the respondent by Wilkins with the respondent's knowledge that they were stolen goods; that Wilkins was confined in the State's prison for a time and was released in October, 1949; that about three months after his release he had a conversation with the respondent and discussed taking money from people's homes around Barre; that he had three or four other conversations with the respondent on this subject, until, on April 21, 1950, they discussed the burglary of the Marr residence, concerned in the cases here. Later, on motion by the respondent, the testimony with reference to sales of stolen goods by Wilkins to the respondent prior to 1947 was stricken from the record on the motion of the respondent without objection by the State. The respondent then moved for a mistrial on the ground that the stricken evidence was of so prejudicial a nature that the effect of the prejudice could not be overcome by striking the evidence or by proper cautions to the jury. The respondent has briefed his exception to the denial of his motion for a mistrial.

It is the general rule that evidence of other acts or offenses is not admissible to prove the commission of the act complained of. *State* v. *Howard,* 108 Vt 137, 151, 183 A 497. But such evidence is admissible in a proper case. See *State* v. *Donaluzzi,* 94 Vt 142, 145, 109 A 57, and cases there cited. The controlling question is: Is the evidence relevant—does it tend to prove any fact material to the issues in the case? If the evidence is admissible on other general grounds, it is no objection to its admission that it discloses other offenses, even though they are indictable. *State* v. *Donaluzzi, supra.* Testimony is admitted to show motive, intent, knowledge, a plan or purpose, or preparation, leading up to or connecting the respondent with the commission of the offense, although it involves proof of a distinct crime. *State* v. *Kelley,* 65 Vt 531, 534, 535, 27 A 203; *State* v. *Eastwood,* 73 Vt 205, 207, 50 A 1077; *State* v. *Sargood and Doyle,* 77 Vt 80, 85, 86, 58 A 971; *State* v. *Donaluzzi, supra; State* v. *Williams,* 94 Vt 423, 430, 111 A 701; *State* v. *Winters,* 102 Vt 36, 50, 145 A 413; *State* v. *Howard, supra.*

Here the testimony which was received and later stricken showed the sale of stolen goods by the principal to the respondent over a period of ten or twelve years and knowledge by the respondent

that the goods were stolen. This testimony showed a motive and purpose for the respondent to commit the crime charged and showed a relationship between the respondent and the principal leading up to and connecting the respondent with the commission of the offense. It was proper evidence in the case. So it does not appear that the rights of the respondent were injuriously affected by the denial of his motion for a mistrial. Supreme Court Rule 9. Since prejudice is not made to appear the exception is not sustained. *State* v. *Parker, supra; State* v. *Schoolcraft,* 110 Vt 393, 396, 8 A2d 682; *State* v. *Frotten,* 115 Vt 146, 147, 53 A2d 52. *Exceptions overruled and judgment affirmed in each case. Let execution be done.*